En el Tribunal Supremo de Puerto Rico

| IN RE: GILBERTO SALAS DAVID<br>    Querellado<br><br>    V. | CONDUCTA<br>PROFESIONAL<br><br>TSPR98-59 |
| --- | --- |

Número del Caso: AB-95-0113

Abogados Parte Querellante: HON. CARLOS LUGO FIOL
PROCURADOR GENERAL

LCDA. CYNTHIA IGLESIAS QUIÑONES
PROCURADORA GENERAL AUXILIAR

Abogados Parte Querellado: POR DERECHO PROPIO

Abogados Parte Interventora:

Tribunal de Instancia: Superior

Juez del Tribunal de Primera Instancia:

Tribunal de circuito de Apelaciones:

Juez Ponente:

Fecha: 6/19/1998

Materia:  Conducta Profesional

        Este documento constituye un documento oficial del Tribunal
        Supremo que está sujeto a los cambios y correciones del
        proceso de compilación y publicación oficial de las
        decisiones del Tribunal. Su distribución electrónica se hace
        como un servicio público a la comunidad.

In re:

    Lcdo. Gilberto Salas David        AB-95-113

**PER CURIAM**

San Juan, Puerto Rico, a 19 de mayo de 1998

    Juan I. Arvelo Toledo presentó queja contra los notarios César Vélez González[1] y Gilberto Salas David.

    Con vista a los Informes de las oficinas de Inspección de Notarías y del Procurador General, el pasado 21 de noviembre de 1997, concedimos al Lcdo. Salas David, término para mostrar causa por la cual no deberíamos disciplinarlo "por su falta de cuidado y pobre desempeño notarial en el otorgamiento de la Escritura Núm. 46 del 9 de julio de 1992", sobre

---

[1] El Lcdo. Vélez González falleció. Sólo ejercemos nuestra jurisdicción disciplinaria sobre el Lcdo. Salas David.

**Compraventa** de una propiedad en el Bo. Dominguito, Arecibo.

Con el beneficio de su comparecencia, resolvemos. Expongamos los hechos que la originan.

I

Carmen Milagros Gil Torres contrató al Lcdo. Vélez González la tramitación de la declaratoria de herederos de su padre fallecido Anastacio Gil Álvarez.[2] Gil Álvarez y su esposa Genoveva Torres Rodríguez poseían entre sus bienes, una propiedad en el Bo. Dominguito de Arecibo, **no inscrita en el Registro**.

El 23 de mayo de 1986, Carmen Milagros Gil Torres, coheredera, mediante Escritura Núm. 38 sobre Compraventa de Derechos otorgada ante el notario Vélez González, compró todos los derechos y acciones **sobre la mitad ganancial** correspondiente a su madre Genoveva, incluso su cuota usufructuaria. También, mediante Escritura Núm. 41 del 12 de junio de 1992, otorgada ante el mismo notario, compró a su hermano Israel Gil Torres todos sus derechos y acciones sobre la herencia.

---

[2] Según **certificación** expedida por el Lcdo. Vélez González el 7 de julio de 1992, dicha declaratoria estaba lista para radicarse ante el tribunal. Conforme sus términos, sus herederos eran Orlando, Israel, Luz María, Juan, Monserrate, Félix Roberto, Antonio y Carmen Milagros Gil Torres y la viuda, Genoveva Torres, en cuanto la cuota de usufructo viudal. En la misma certificación aclara que Israel Gil vendió sus derechos hereditarios a Carmen Milagros Gil Torres.

El notario Salas David alega que no vio dicha certificación hasta el 11 de diciembre de 1995 y que las partes le ocultaron la existencia del procedimiento hereditario.

El 19 de junio de 1992, mediante Escritura Núm. 43, ante el mismo Vélez González, Carmen Milagros confirió al Sr. Edgardo Gil Álvarez, **Poder Especial** para enajenar, hipotecar, gravar, vender, y poder disponer de la propiedad del Bo. Dominguito, **"como si fuera la misma Carmen Milagros Gil Torres."** En el mismo **Poder** se le autorizó al apoderado de "comprar, adquirir y en cualquier forma pagar la adquisición de todo o en parte de derechos y acciones de dicha propiedad descrita y que aún pertenezcan a alguno de los herederos de Don Amastacio [sic] Gil Álvarez." **Surge claramente del documento que la participación de otros coherederos no se había adquirido aún, por lo que la poderdante no era única propietaria del bien en cuestión. Además, surgía de la descripción del inmueble que no estaba inscrito.**

Así las cosas, aproximadamente tres (3) semanas después, el 9 de julio de 1992, el apoderado Gil Álvarez compareció ante el notario Salas David y mediante Escritura Núm. 46, **vendió al quejoso Arvelo Toledo y su esposa Luz María López Soto, la totalidad del inmueble.** Se expresó en la Escritura que Carmen Milagros adquirió la propiedad por compra a Genoveva Torres Rodríguez. Además, a pesar de consignar que la propiedad no estaba inscrita, el notario Salas David advirtió a los compradores –quejosos– la conveniencia de realizar estudio registral de título. A la misma vez, se declaró en la escritura que "la parte COMPRADORA [quejosa], manifestó que el estudio de título lo había realizado personalmente."

II

Como correctamente se expone en los Informes de Inspección de Notarías y del Procurador General, al 9 de julio de 1992, la vendedora Carmen Milagros Gil Torres no **era dueña de la totalidad** de la finca. Poseía la mitad ganancial y la cuota usufructuaria comprádale a Genoveva Torres Rodríguez. También era acreedora de su propia participación, y la adquirida a su hermano Israel, sobre la totalidad de la herencia.

Al momento en que el notario Salas David autenticó el instrumento, no había declaratoria de herederos ni escritura de división de herencia. La Sra. Carmen Milagros Gil Torres no era la única heredera, a**l restar seis (6) partes alícuotas sin adquirir**. En ningún momento se intentó aclarar esta situación particular.

El alegado engaño no es suficiente excusa ni defensa para eximir de responsabilidad ética a Salas David. Según su propia comparecencia, él tenía sus dudas desde que el quejoso le explicó el negocio jurídico.

Salas David vio el Poder Especial a nombre de Edgardo Gil Álvarez, cuyo contenido <u>in fine</u> exponía que la finca **no estaba inscrita**, y además, se hacía alusión a que **había que pagar por la adquisición de derechos y acciones de otros herederos**. En su defensa, el Lcdo. Salas David aduce que el quejoso Arvelo Toledo lo engañó pues le manifestó el día antes de otorgarse la escritura que tenía información de que había sido inscrita y que si había duda él haría el estudio de título correspondiente. Al otro día le informó que había ido al

Registro y todo estaba en orden. Asimismo lo hizo constar Salas David en la propia escritura leída por Arvelo Toledo al otorgarse. Sin embargo, ello contrasta con otro hecho conocido, admitido y consignado por el notario, a saber, que **la propiedad no estaba inscrita.** En su alegato, nos admite que le informó al quejoso que a pesar de sus manifestaciones "haría constar en la escritura que la propiedad no se encontraba inscrita, como se expresaba en la Escritura de Poder..." De la misma manera, el notario nos explica que tanto el apoderado Gil Álvarez como el quejoso le explicaron que Carmen Milagros era la heredera universal al adquirir del único restante heredero, el mismo Edgardo Gil Álvarez, su cuota en la herencia. De la Contestación al Informe de la Oficina de Inspección de Notarías, Salas David admite que tuvo ante sí la escritura del 23 de mayo de 1986 y la escritura de poder del 19 de junio de 1992. Surge claramente de estos documentos que Carmen Milagros sólo adquirió de Genoveva Torres Rodríguez la mitad ganancial del bien inmueble. A pesar de este hecho indiscutible y con pleno conocimiento, el notario indujo a error al consignar en la escritura en cuestión lo siguiente: "continúa manifestando el <u>VENDEDOR</u> que su mencionada poderdante adquirió el descrito inmueble por compra a DOÑA GENOVEVA TORRES RODRIGUEZ mediante la escritura número treinta y ocho, de fecha veintitrés de mayo del año mil novecientos ochenta y seis, otorgada en Arecibo, Puerto Rico, ante el licenciado CÉSAR VÉLEZ GONZÁLEZ."

El notario autorizó el negocio jurídico a pesar que surge del poder que el apoderado Edgardo Gil Álvarez, carecía de

autoridad para vender una propiedad que no le pertenecía únicamente a la poderdante Gil Torres. Tampoco se probó que éste estaba capacitado para representar a los restantes herederos. ¿Por qué se conformó con una simple explicación verbal de Arvelo Toledo, y luego de Gil Álvarez, a los efectos de que todo estaba resuelto por haberse comprado tales participaciones? ¿Por qué no exigió documento fehaciente a tales efectos? ¿Cómo es posible ahora descansar en un alegado estudio de título de una propiedad que hacia tres (3) semanas no estaba inscrita y que reconoce que sospechó como fatulo? ¿Por qué hacer constar que la propiedad se adquirió mediante compraventa en escritura, teniendo conocimiento que no fue así?

### III

Como jurista, la responsabilidad notarial de hacer las reservas y advertencias legales pertinentes implica una gestión intelectual y aplicación inteligente de los principios de derecho positivo y jurisprudenciales. Esa función no se da en el vacío; conlleva tomar en cuenta el contenido del negocio y significado total e integral de las estipulaciones a suscribir y consentir. El mero hecho de hacer constar expresiones conflictivas entre la creencia del notario y lo manifestado por los otorgantes no lo exime de responsabilidad. A pesar de sus sospechas fundadas Salas David se limitó a advertir que verificarán si estaba inscrita a favor de la vendedora, aun sospechando que sería imposible. No surge que haya ilustrado y advertido a las partes sobre la necesidad de liquidar una herencia, la titularidad del caudal y las

implicaciones futuras de compraventas y escrituras en ese estado. Tampoco tomó en consideración los efectos que tal escritura podría tener ante terceros y el registro de la propiedad.

El curso notarial apropiado y prudencial era posponer el otorgamiento para aclarar la situación. No podemos refrendar una norma que relaje el propósito verdadero de la práctica notarial, a saber, **el otorgamiento de instrumentos jurídicamente eficaces y legales**.

No nos cabe duda de que el instrumento en cuestión fue preparado y autorizado en forma descuidada y desprevenida. El notario tuvo suficientes indicadores para desconfiar en la validez del negocio y actuó sin ánimo precavido, confiando en quien admitidamente no podía confiar.[3] No lo exime que consignara en la escritura que su fe descansaba en lo manifestado por los comparecientes. Sabía o debió saber que la realidad no era como se hacía constar.

Ante las circunstancias expuestas procede imponer como sanción una suspensión de tres (3) meses del ejercicio de la notaría.

---

[3] El Notario Salas David admite haber tenido problemas con el quejoso Arvelo Toledo. Para el 12 de marzo de 1992, suscribió una escritura de **Compraventa** en la cual el quejoso era el comprador, y el mismo día se enteró que la intención era ocultar un préstamo garantizado con hipoteca en el cual Arvelo Toledo era el acreedor.

Sin pasar juicio sobre el quejoso Arvelo Toledo, contrasta su reclamo y expresión gramatical y ortográfica del 6 de noviembre de 1995 –cuando prepara la queja en que alega "nosotros no tenemos mucha escuela yo primer grado y mi esposa quinto grado de escuela elemental los dos"- con sus expresiones posteriores (Moción Informativa del 4 de enero de

Se dictará la correspondiente sentencia.

---

1996, Moción Solicitando Anotación de Rebeldía del 13 de febrero de 1998).

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re:

    Lcdo. Gilberto Salas David        AB-95-113

SENTENCIA

San Juan, Puerto Rico, a 19 de mayo de 1998

    Por los fundamentos expuestos en la Opinión Per Curiam que antecede, la cual se hace formar parte integrante de la presente, se dicta sentencia suspendiendo al Lcdo. Gilberto Salas David del ejercicio de la notaría por el término de tres (3) meses.

    Se ordena a la Oficina del Alguacil que se incaute de su obra notarial para ser remitida, examinada y oportunamente objeto de un Informe por parte de la Oficina de Inspección de Notarías.

    Lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo.

                    Isabel Llompart Zeno
                    Secretaria del Tribunal Supremo